UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.: 3:07-CR-95 |
| | ) | (VARLAN/GUYTON) |
| JOHN WESLEY IRONS, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

This criminal case is before the Court for consideration of the Reports and Recommendations ("R&Rs") entered by United States Magistrate H. Bruce Guyton on November 26, 2008 ("first R&R") [Doc. 72] and February 2, 2009 ("second R&R") [Doc. 81]. The government filed an objection to the first R&R [Doc. 74], the defendant filed an objection to the second R&R [Doc. 84], and the government filed a response to defendant's objection [Doc. 88]. The Court will consider the parties' objections *de novo*.

**I.     Procedural Background**

Defendant is charged with seven counts of maliciously damaging and destroying and attempting to damage and destroy, by means of fire, real property owned by the United States Forestry Service, in violation of 18 U.S.C. § 844(f)(1) and (2) and seven counts of setting on fire timber, underbrush, grass, and other flammable material upon land owned by the United States, in violation of 18 U.S.C. § 1855. [*See* Doc. 3.] Defendant filed a Motion to Suppress Confidential Martial Communication [Doc. 23], a Motion to Suppress Defendant's Statement

to Officers after Request for Counsel [Doc. 24], a Motion to Suppress Defendant's August 8, 2007 Statement as a Result of Law Enforcement's Illegal "Save Jane" Ruse [Doc. 25], and a Motion In Limine to Exclude All Derivative Evidence Obtained Directly or Indirectly from Confidential Marital Communications Pursuant to *Wong Sun v. United States* and the Fruit of the Poisonous Tree Doctrine [Doc. 40].

Magistrate Judge H. Bruce Guyton held an evidentiary hearing on the motions to suppress on October 30, 2007, which was continued on December 11, 2007, and reopened on May 5, 2008. On June 25, 2008, Magistrate Judge Guyton ordered the parties to present oral arguments on the motions [*see* Doc. 59] and oral arguments were held on August 13, 2008. Magistrate Judge Guyton filed the first R&R [Doc. 72] on November 26, 2008 recommending that defendant's Motion to Suppress Confidential Marital Communication [Doc. 23] and his Motion to Suppress Defendant's August 8, 2007 Statement as a Result of Law Enforcement's Illegal "Save Jane" Ruse [Doc. 25] be granted and defendant's Motion to Suppress Defendant's Statement to Officers after Request for Counsel [Doc. 24] and his Motion In Limine to Exclude All Derivative Evidence Obtained Directly or Indirectly from Confidential Marital Communications Pursuant to *Wong Sun v. United States* and the Fruit of the Poisonous Tree Doctrine [Doc. 40] be denied.

After the issuance of the first R&R, defendant filed a Motion for Leave to File Additional Motions [Doc. 75] and a Motion in Limine to Exclude Defendant's Second Statement To Police Pursuant to *Wong Sun v. United States* and the Fruit Of the Poisonous Tree Doctrine [Doc. 76]. Magistrate Judge Guyton granted defendant leave to file Motion

in Limine to Exclude Defendant's Second Statement [Doc. 76] but stated that defendant shall file no other motions without first obtaining leave of Court. [*See* Doc. 80.] On February 2, 2009, Magistrate Judge Guyton issued his second R&R [Doc. 81] recommending that defendant's Motion in Limine to Exclude Defendant's Second Statement [Doc. 76] be denied. This matter is before the Court on the government's objection to the first R&R [Doc. 74] and defendant's objection to the second R&R [Doc. 84].

**II.   Factual Background**

Defendant Irons was arrested between 10:15 and 10:30 a.m. on August 8, 2007 in a Wal-Mart parking lot after responding to Officer Jane Wright's request that he meet her there. After he was arrested, Forest Service Officer Brian Webb and Special Agent Jenny Davis got into a police car with the defendant. Defendant agreed to be interviewed. Agent Davis gave defendant the option of being interviewed at the jail or at the Tellico Blockhouse, a park, and defendant picked the park.

Defendant inquired whether Officer Wright was in trouble and Agent Davis told him that she had been arrested and was potentially in trouble. Agent Davis asked defendant if he would like Officer Wright to be present during his interview and, after defendant indicated that he would like for her to be there, she was brought to the scene in handcuffs. Defendant, Agent Davis, and Officer Wright sat under a tree at the Tellico Blockhouse. Agent Davis read defendant his *Miranda* rights and defendant indicated that he understood his rights. She then began interviewing defendant with his consent around 11:00 a.m.

3

The interview later continued in Agent Davis's police vehicle. Around 1:00 p.m., Agent Davis, Officer Webb, and defendant stopped at Baker's Grave Road outside Tellico Plains to allow defendant to speak to his wife, who was handcuffed and with Agent Russ Arthur. Defendant and his wife, both handcuffed, talked to each other for three to five minutes. Defendant has already confessed to setting several forest fires but he gave more detail after seeing his wife in handcuffs. Additionally, defendant admitted to Agent Arthur that he had set fire to Forest Service employee Rex Kelly's home while Agent Arthur accompanied defendant away from the others to use the restroom and Agent Arthur assisted him in getting a drink from the stream. After defendant stated that he would like to apologize to Kelly, Agent Arthur took him to a bank parking lot so they could get cellular telephone service to call Kelly. After defendant spoke with Kelly, Agent Arthur took him back to Baker's Grave Road.

Agent Davis testified that she completed writing out defendant's six-page statement at about 3:00 p.m. She read the statement to defendant, he made a correction, she read the entire statement again, and defendant signed both the statement and the rights waiver form. He was then taken to the Blount County Jail, where he was booked around 4:25 p.m. and detained. At 8:00 a.m. the next morning, August 9, 2007, Agent Arthur interviewed defendant at the Blount County Jail and he obtained a three-page statement which defendant signed. Prior to making the statement, defendant acknowledged that Officer Davis advised him of his rights the previous day and stated that he did not want an attorney.

### III.     Analysis

As required by 28 U.S.C. § 636(b)(1), the Court has undertaken a *de novo* review of those portions of the R&R to which defendants object. In doing so, the Court has carefully considered Judge Guyton's R&Rs [Docs. 72, 81], the underlying briefs [Docs. 23; 24; 25; 29; 34; 35; 40; 42; 76; 78; 79], and briefs regarding the pending objections [Docs. 74; 84; 88]. For the reasons set forth herein, the Court will overrule the government's and the defendant's objections [Docs. 74, 84].

### A.     Government's Objection to Conclusion that the "Save Jane Ruse" Amounted to Police Coercion Rendering Defendant's Statement Involuntary

The United States objects to Magistrate Judge Guyton's finding that defendant's statement to police on August 8, 2007 was involuntary because the law enforcement tactics used were coercive. However, the government states that there is no need for further review of this issue at this time because the government does not intend to offer the August 8, 2007 statement as evidence in its case-in-chief. Accordingly, the government does not offer any argument supporting its objection to the first R&R.

The Court is not required to engage in *de novo* review of non-specific objections. *See Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986); *see also VanDiver v. Martin*, 304 F. Supp. 2d 934, 937 (E.D. Mich. 2004). Because the government does not advance any arguments in support of its objection, the Court does not find that any specific objections have been made. Because no proper objections were timely filed, the Court will treat any objections as having been waived. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The

5

Court has carefully reviewed this matter, and is in agreement with Magistrate Judge Guyton's recommendation which the Court adopts and incorporates into its ruling and the government's objection is **OVERRULED**.

B.  **Defendant's Objection to the Conclusion That There Was a "Clean Break" Between the Coercive Interview and the Statement Obtained the Following Day**

Defendant objects to Magistrate Judge Guyton's recommendation that defendant's Motion in Limine to Exclude Defendant's Second Statement To Police Pursuant to *Wong Sun v. United States* and the Fruit Of the Poisonous Tree Doctrine [Doc. 76] be denied. In his motion, defendant argues that forest service agents used information acquired during the coercive interrogation of August 8, 2007 in order to elicit a second statement from the defendant on the following day, August 9, 2007, and this derivative evidence should be excluded as "fruit of the poisonous tree." Magistrate Judge Guyton found that defendant's August 9, 2007 statement is admissible "because there was a clean break between the two interviews, defendant was interviewed at a different location by Agent Arthur, and defendant was aware of his *Miranda* rights." [Doc. 81.]

A statement from an individual which was obtained from the exploitation of an illegal search or seizure, and thus, is fruit of the poisonous tree, should not be admitted at trial unless the statement "was sufficiently an act of free will to purge the primary taint of the unlawful [action]." *Wong Sun v. United States*, 371 U.S. 471, 486 (1963). Having made a prior confession of guilt does not necessarily render any future statement involuntary. *See Daniel*, 932 F.2d at 520 (citing *United States v. Bayer*, 331 U.S. 532, 540-541 (1947)).

6

> [A]fter an accused has once let the cat out of the bag by confessing, no matter what the inducement, he is never thereafter free of the psychological and practical disadvantages of having confessed. He can never get the cat back in the bag. The secret is out for good. In such a sense, a later confession may always be looked upon as fruit of the first. But this Court has never gone so far as to hold that making a confession under circumstances which preclude its use, perpetually disables the confessor from making a usable one after those conditions have been removed.

*Bayer*, 331 U.S. at 540-541. However, "[T]he fact that the earlier statement was obtained . . . by coercion is to be considered in appraising the character of the later confession." *Lyons v. Oklahoma*, 322 U.S. 596, 603 (1944).

In evaluating the voluntariness of the second statement, the Court must determine whether the defendant "knowingly and intelligently waived his right to remain silent and his right to consult with counsel prior to the time he made the statement." *United States v. Daniel*, 932 F.2d 517, 519 (1991) (citations omitted). Factors for the Court to consider in determining whether the coercion that occurred during the first statement has carried over into the second statement include: (1) the time that passed between confessions, (2) whether there was a change in place of interrogations, and (3) whether there was a change in identity of the interrogators. *Oregon v. Elstad*, 470 U.S. 298, 310 (1985) (citations omitted); *Daniel*, 932 F.2d at 519; *see also Lyons*, 322 at 598-604. The Supreme Court has found that approximately twelve hours between interviews, accompanied by a change in location, and different interviewers was sufficient to purge the taint of an initial coercive interview. *See Lyons*, 322 U.S. at 598-603.

The circumstances of this case are similar to that of *Lyons*. In *Lyons*, defendant was initially interviewed beginning at 6:30 p.m. at the county prosecutor's office. *Id.* at 598. The

7

defendant eventually provided a confession around 2:30 a.m. *Id.* at 599. During the interview, a pan of the murder victims' bones was placed on defendant's lap. *Id.* at 599-600. After he confessed, defendant was taken to the crime scene to provide more information. *Id.* at 600. He was not returned to the jail until approximately 8:30 a.m. *Id.* The statement which occurred during this period of time was deemed to be coerced. *Id.* The same day defendant was returned to the jail, he was transferred to the state penitentiary. *Id.* The warden of the penitentiary began interviewing the defendant between 8:00 and 11:00 p.m. that night and defendant signed a second confession. *Id.* The Supreme Court upheld the trial court's determination that defendant's second confession which occurred approximately 12 hours after the initial questioning ended, at a different location, and was obtained by a different interviewer was voluntary and could be used to determine his guilt at trial. *Id.* at 605.

In this case, the defendant's coerced statement was given between 11:00 a.m. and 3:00 p.m. by Agent Davis at the Tellico Blockhouse and in her police vehicle outside Tellico Plains. Defendant was not interviewed again until 8:00 a.m. the next morning at the Blount County Jail by Agent Arthur. Thus, although coercive tactics were used to obtain defendant's initial statement, the place of the interview and identity of the interviewing officer changed between the first and second interviews. Additionally, approximately seventeen hours passed between the interviews.

Defendant's argument that the change of interviewers was insignificant because Agent Arthur was present on both August 8, 2007 and August 9, 2007 fails because Agent Arthur's

8

role on August 8, 2007 was minimal, at least from defendant's perspective. Although Agent Arthur spoke to defendant on August 8, 2007 and defendant confessed to him that he set fire to Kelly's home, defendant made this statement as Agent Arthur was aiding defendant in his requests to use the restroom and to apologize to Kelly, not because Agent Arthur was interrogating him. Thus, when Agent Arthur stepped into the role of interrogator on August 9, 2007, it was a change in circumstance.

Additionally, as noted by the government, neither Officer Wright or defendant's wife were present during the second interview. The involvement of these two women during the first interview was one of the main factors which led the Court to conclude that the first statement was coerced. Therefore, their absence during the second interview not only is a change in circumstances that supports a clean break, but also removes the main coercive circumstances that were present the day before.

Based on a review of the circumstances, the Court finds that defendant's statement on August 9, 2007, was voluntary and that defendant knowingly and intelligently waived his right to remain silent. The Court is in agreement with Magistrate Judge Guyton's recommendation which the Court adopts and incorporates into its ruling and the defendant's objection is **OVERRULED**.

IV. **CONCLUSION**

For the reasons set forth herein, the Court **ACCEPTS IN WHOLE** the the Reports and Recommendations ("R&Rs") entered by United States Magistrate H. Bruce Guyton on November 26, 2008 ("first R&R") [Doc. 72] and February 2, 2009 ("second R&R") [Doc.

9

81], defendant's Motion to Suppress Confidential Marital Communication [Doc. 23] and his Motion to Suppress Defendant's August 8, 2007 Statement as a Result of Law Enforcement's Illegal "Save Jane" Ruse [Doc. 25] are hereby **GRANTED**, and defendant's Motion to Suppress Defendant's Statement to Officers after Request for Counsel [Doc. 24], his Motion In Limine to Exclude All Derivative Evidence Obtained Directly or Indirectly from Confidential Marital Communications Pursuant to *Wong Sun v. United States* and the Fruit of the Poisonous Tree Doctrine [Doc. 40], and defendant's Motion in Limine to Exclude Defendant's Second Statement [Doc. 76] are hereby **DENIED**.

    IT IS SO ORDERED.

                                          s/ Thomas A. Varlan
                                          UNITED STATES DISTRICT JUDGE